IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | | |
|---|---|---|
| JORGE VALLE-RAMOS, | ) | |
| | ) | Case No. 6:24-CV-1276 |
| *Plaintiff*, | ) | |
| | ) | |
| *v.* | ) | |
| | ) | |
| CITY OF ORLANDO, MICHAEL STANLEY, and UNKNOWN OFFICERS. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| *Defendants*. | ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**

*Counsel for Plaintiff*
Jon Loevy
Rosalind Dillon
Loevy and Loevy
311 N. Aberdeen St.
Chicago, IL 60607
jon@loevy.com
dillon@loevy.com

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1
FACTUAL BACKGROUND ........................................................................................... 2
LEGAL STANDARD ....................................................................................................... 6
ARGUMENT .................................................................................................................... 6
I. Plaintiff's Complaint Is Not A Shotgun Pleading ................................................. 6
    A. The Purported Pleading Defects Do Not Make It Virtually Impossible To Understand Which Allegations Of Fact Support Which Claims For Relief .......... 6
    B. This Court Should Reject Defendants' Challenge To Plaintiff's Failure To Intervene (Count III) And Conspiracy (Counts IV & VII) Claims ......................... 9
II. Plaintiff Provided Sufficient Identifying Information For Two "Unknown Officer" Defendants To Survive Dismissal ................................................................... 11
III. Plaintiff's *Monell* Allegations Are Not Conclusory .......................................... 12
IV. The City Is Not Entitled To Sovereign Immunity On Plaintiff's State-Law Conspiracy Claim .................................................................................................... 14
V. Plaintiff's Due Process (Count I) And Malicious Prosecution (Counts II & V) Claims Against Defendant Stanley Do Not Need To Be "Cleaned Up" ....................... 15
CONCLUSION ............................................................................................................... 18

# TABLE OF AUTHORITIES

**Cases**                                                **Page(s)**

*Adickes v. S.H. Kress & Co*, 389 U.S. 144 (1970) ................................................................ 13
*Alvarez v. Provident Life & Accident Ins. Co.*, 2016 WL 9526461 (M.D. Fla. Apr. 25, 2016) ...... 6
*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..................................................................................... 6
*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ......................................................... 6, 10, 17
*Blue v. Lopez*, 901 F.3d 1352 (11th Cir. 2018) ...................................................................... 17
*Byrd v. Clark*, 783 F.2d 1002 (11th Cir. 1986) ........................................................................ 9
*City of St. Louis v. Praprotnick*, 485 U.S. 112 (1988) ........................................................... 13
*Chunhong Jia v. Boardwalk Fresh Burgers & Fries, Inc.*, 2020 WL 5628734
(M.D. Fla. Sept. 21, 2020) ...................................................................................................... 15
*Darnell v. Rivera*, 2016 WL 309050 (M.D. Fla. Jan. 26, 2016) ............................................ 14
*Dean v. Barber*, 951 F.2d 1210 (11th Cir. 1992) ................................................................... 11
*Doss v. Holder*, 2023 WL 6313935 (M.D. Fla. Sept. 28, 2023) ...................................... 11, 12
*Ensley v. Soper*, 142 F.3d 1402 (11th Cir. 1998) .................................................................... 9
*Fundiller v. City of Cooper City*, 777 F.2d 1436 (11th Cir. 1985) ........................................ 13
*Gates v. Khokai*, 884 F.3d 1290 (11th Cir. 2018) .................................................................... 6
*Gore v. Hardy*, 2011 WL 13295388 (M.D. Fla. May 23, 2011) ............................................ 16
*Grider v. City of Auburn*, Ala., 618 F.3d 1240 (11th Cir. 2010) ........................................... 17
*Griffin v. City of Opa-Locka*, 261 F.3d 1295 (11th Cir. 2001) .............................................. 13
*Hoefling v. City of Miami*, 811 F.3d 1271 (11th Cir. 2016) ............................................ 12, 14
*In re Egidi*, 571 F.3d 1156 (11th Cir. 2009) .......................................................................... 16

*Johnson v. Dugger*, 817 F.2d 726 (11th Cir. 1987) ..................................................................16
*Kyle K. v. Chapman*, 208 F.3d 940 (11th Cir. 2000) ..................................................................8
*Lane v. Phillips*, 835 F.3d 1302 (11th Cir. 2006) ......................................................................6
*Maddox v. Georgia Dep't of Hum. Servs., Div. of Fam. & Child. Servs.*, 2012 WL 12893269 (N.D. Ga. Sept. 28, 2012) .........................................................................................................10
*McKenzie v. United States Tennis Ass'n Inc.*, 2023 WL 3058036 (M.D. Fla. Apr. 24, 2023) .......15
*Monell v. Department of Social Services*, 436 U.S. 658 (1978) ................................................12
*Melford v. Kahane & Assocs.*, 371 F. Supp. 3d 1116 (S.D. Fla. 2019) ..................................17, 18
*N.R. by Ragan v. Sch. Bd. of Okaloosa Cnty., Fla.*, 418 F. Supp. 3d 957 (N.D. Fla. 2019) .........14
*Richardson v. Johnson*, 598 F.3d 734 (11th Cir. 2010) .........................................................11, 12
*Swierkiewicz v. Sorema*, N.A., 534 U.S. 506 (2002) ................................................................14
*S.Y. v. Holiday Hospitality*, 2021 WL 1751363 (M.D. Fla. May 4, 2021) ....................................8
*Trump v. Clinton*, 626 F. Supp. 3d 1264 (S.D. Fla. 2022) .........................................................18
*Vielma v. Gruler*, 808 F. App'x 872 (11th Cir. 2020) ................................................................11
*Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313 (11th Cir. 2015) ....................6, 7, 9
*Youngblood v. Fla.*, 2005 WL 8159645 (M.D. Fla. Mar. 17, 2005) ............................................11

**Rules**

Fed. R. Civ. P. 8 ...............................................................................................................6, 10, 16

**Statutes**

42 U.S.C. § 1983......................................................................................................... *passim*
Fla. Stat. § 768.28(9)(a) ...........................................................................................................14

## INTRODUCTION

Plaintiff Jorge Valle-Ramos alleges that he was wrongfully convicted of burglary and grand theft. Arrested at only 19 years old, Plaintiff spent the next three years in prison, spent five years on supervised release, and had to pay restitution for crimes he did not commit. His conviction rested on the false and manipulated identifications and testimony of two witnesses. Plaintiff was exonerated when, after nearly a decade, an eyewitness who was manipulated into identifying him realized she made a horrible mistake and recanted her identification. Plaintiff moved for a new trial based on that recantation and, after a hearing, the court vacated Plaintiff's conviction in March 2024. A week later, the State entered a motion of *nolle prosequi* and dismissed all charges.

1

The story of how Plaintiff came to be prosecuted and convicted starts and stops with Defendants: Detective Michael Stanley, Unknown Officers, and the City of Orlando ("City"). In particular, Orlando Police Officers, in conspiracy with one another, fabricated a photo-array lineup designed to implicate Plaintiff and withheld the manner in which that fabrication was concocted to coverup their wrongdoing. The Orlando Police Officers then coerced and manipulated eyewitness identifications using the photo-array to implicate their chosen suspect, even though they knew there was no reason to believe that Plaintiff committed the crimes. Plaintiff's Complaint tells that story, providing Defendants with detailed notice of his claims against them.

Rather than engaging with the well-pled facts, Defendants move to dismiss, declaring Plaintiff's Complaint a "shotgun complaint" and raising various other underdeveloped challenges. Defendants' arguments lack merit, and their motion should be denied.

## FACTUAL BACKGROUND
### The Crime

On April 9, 2013, three young men burglarized George Gonzalez's home, stealing some jewelry. ECF No. 1 ¶ 17. Gonzalez returned home and ran into the burglars, causing them all to flee his home. *Id*. ¶¶ 18-19. When Orlando Police Department ("OPD") responded to the scene, Gonzalez described one of the burglars as young and having an afro. *Id*. ¶ 20. Bethany Szewcyzk lived in an adjacent condominium complex. *Id*. at ¶ 21. As she was leaving for work, she saw three young men run and jump into a vehicle parked in the roadway near her carport. *Id*. She described the driver as young and with "poofy" hair like an afro. *Id*. ¶ 22. Another neighbor, Charlene Bloom, witnessed the three young men fleeing from the scene from her second-story window. *Id*. ¶ 23. Plaintiff Jorge Valle-Ramos had absolutely nothing to do with this crime. *Id*. at ¶¶ 1-6.

### The Unduly Suggestive Identification Procedures

The day after the burglary, Detective Michael Stanley of the OPD was assigned to the case.

*Id*. ¶ 30. At that point, he had been a Detective for just under a year. *Id*. Based on nothing more than a hunch, Stanley concluded that one of the burglars was Plaintiff, who had been a passenger in a car pulled over by OPD officers a week prior. *Id*. ¶ 31. Instead of legitimately investigating the crime, Stanley prepared a deliberately suggestive six-person photo array using photographs obtained from the State's driver's license database. *Id*. ¶ 32. Because the witnesses had described a perpetrator with an afro, Stanley included an old photo of Plaintiff in which he had an afro, a hairstyle he did not wear in April 2013. *Id*. ¶ 33. Stanley also included five other "filler" photographs, but not a single one of the other photos in the photo array had an afro. *Id*. ¶ 34.

About a week after the burglary, Stanley showed Gonzalez the array containing Plaintiff's photo, knowing he would identify Plaintiff because he was the only choice with an afro. *Id*. ¶ 36. Based on this unduly suggestive procedure, Gonzalez did identify Plaintiff. *Id*. Defendant Stanley then showed Gonzalez a second picture of Plaintiff—this one depicting an even bigger afro—improperly reinforcing in Gonzalez's mind that he had identified one of the perpetrators. *Id*. ¶ 37.

At that point, Plaintiff did not have an afro—he had long hair that hung down over his face and shoulders. *Id*. at ¶ 29. Nonetheless, Defendant Stanley secured an arrest warrant for Plaintiff based on the false and manipulated witness identification. *Id*. ¶ 47. Stanley and an unidentified Orlando Police Officer arrested and interrogated Plaintiff. *Id*. ¶¶ 47-48. At some point during the interrogation, Stanley showed Plaintiff his driver's license photo and asked, "Is this you?" *Id*. Plaintiff confirmed that it was. *Id*. But it was obvious to the Defendant Officers that Plaintiff, who had his hair pulled back in a ponytail, in no way resembled the man with a "poofy" afro described by the witnesses. *Id*. ¶¶ 48-49. They nonetheless persisted in framing Plaintiff. *Id*. ¶ 49.

Nearly five months later, in September 2013, Stanley decided to show the unduly suggestive photo array to Szewczyk in an effort to strengthen the case against Plaintiff with another false identification. *Id*. ¶ 39. Szewczyk identified Plaintiff because, in the photo, he had an afro.

*Id*. ¶ 40. Szewczyk had some doubt, however, based on the quality of the photographs in the array, as to whether the skin tone or eye color matched the young man she had seen fleeing five months earlier. *Id*. ¶ 41. Before she could express those doubts, however, Stanley smiled and informed Szewczyk, "that's the guy," and told her that the victim (Gonzalez) had identified the same photograph. *Id*. ¶ 42. That confirmation was unduly suggestive, and temporarily quelled any doubts Szewczyk had about her identification. *Id*.

Around the same time, Defendants reached out to Bloom. *Id*. ¶ 43. By that point, Bloom had seen Plaintiff's mugshot on the internet, and she told Defendants that she had not seen him on April 9, 2013. *Id*. Because Defendants were more interested in framing Plaintiff than legitimately investigating the crime, they told Bloom she did not need to participate in a lineup. *Id*.

**Plaintiff's Wrongful Conviction and Exoneration**

Based on the false and manipulated witness identifications, Plaintiff was tried in a jury trial on May 21, 2014. *Id*. ¶ 50. The State's case hinged upon the identifications by Gonzalez and Szewczyk. *Id*. ¶ 51. No other evidence, physical or otherwise, linked Plaintiff to the crime. *Id*.

Gonzalez testified first and identified Plaintiff. *Id*. ¶ 52. When Szewczyk arrived in court that day, she was uneasy about her identification, and when she saw Plaintiff in person, she questioned whether he was one of the young men she had seen fleeing on April 9, 2013. *Id*. But, despite an order of sequestration, Stanley introduced her to Gonzalez—after Gonzalez testified but before Szewczyk had. *Id*. ¶ 53. Gonzalez told her that he was certain that Plaintiff was one of the burglars. *Id*. Szewczyk's doubts were assuaged, and she too identified Plaintiff. *Id*. ¶ 54. Without the unduly suggestive photo lineup resulting in Gozalez and Szewczyk's manipulated confessions, Plaintiff never would have been convicted. *Id*. ¶ 58.

Plaintiff was convicted of burglary and grand theft in the third degree. *Id*. ¶ 59. The judge sentenced him to thirty months in prison to be followed by five years of supervised release, along

with nearly $9,000 in restitution. *Id*. ¶ 59. Plaintiff was also ordered to pay the investigative costs: A total of $116.40 for six hours of Stanley's time. *Id*. ¶ 60. A supervising Officer for the OPD signed off on the investigative cost expense report. *Id*. ¶ 60.

Never giving up on proving his innocence, in 2022, Plaintiff requested, and was ultimately granted, a hearing based on newly discovered evidence in the form of Szewczyk's recantation of her identification. *Id*. ¶ 64. At the hearing Szewczyk testified that the issue of her identification had troubled her for years. *Id*. ¶ 65. She had doubts during the photo lineup and at trial, but both times she was reassured: Stanley told her, "that's the guy," after she selected Plaintiff from the photo array, and Stanley introduced her to Gonzalez at the trial, who assured her Plaintiff was the perpetrator. *Id*. Her fears were confirmed, however, when she was shown the photograph of another man, Amos Ortiz (deceased), who looked similar to Plaintiff. *Id*. ¶ 66. Around the time of the burglary, Ortiz had lived near the Gonzalez residence and had committed other property crimes in the area. *Id*. ¶ 67. Immediately, Szewczyk knew she was looking at the man she had seen fleeing the burglary, and she knew she had to recant her identification of Plaintiff. *Id*.

Stanley also testified. *Id*. ¶ 68. He claimed to barely remember the photo array, but also claimed to be certain that he never told Szewczyk that the person she selected was the guy. *Id*. And even though he barely remembered the trial, he insisted that Szewczyk never expressed any doubts as to her identification and that he never interacted with the witnesses that day. *Id*. Between the two, the court found Szewczyk's testimony to be more reliable. *Id*. ¶ 69.

On March 5, 2024, the court vacated Plaintiff's conviction and, a week later, the State entered a motion of *nolle prosequi* and dismissed all charges against him. *Id*. ¶ 70.

**The City's Policies and Practices Caused Plaintiff's Wrongful Conviction**

The misconduct that led to Plaintiff's wrongful conviction was not an anomaly. Rather, it was the direct result of the City's constitutionally deficient practices. In particular, Plaintiff's

5

Complaint identified a number of practices and customs, including that Orlando Police Officers: "fabricated evidence," "manipulat[ed] false eyewitness identifications," "destroyed … evidence," and "withheld material exculpatory evidence." *Id*. ¶¶ 1, 82-83, 98.

## LEGAL STANDARD

Federal Rule of Civil Procedure 8 requires only "a short and plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a). At this stage of the case, courts evaluate the sufficiency of the pleading based on a liberal "notice pleading" standard where the pleading need only give defendants fair notice of the claims, not "detailed factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). Indeed, at the motion to dismiss stage, all that is required is that the plaintiff "set out facts sufficient to 'raise a right to relief above the speculative level.'" *Lane v. Phillips*, 835 F.3d 1302, 1305 (11th Cir. 2006) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Moreover, although the plaintiff's allegations "must be plausible . . . plausibility is not probability." *Id*.

On a motion to dismiss, the court will "liberally construe the complaint's allegations in the Plaintiff's favor." *Alvarez v. Provident Life & Accident Ins. Co.*, 2016 WL 9526461, at *1 (M.D. Fla. Apr. 25, 2016). To that end, this Court "accept[s] the facts alleged in the complaint as true, drawing all reasonable inferences in the plaintiff's favor." *Gates v. Khokai*, 884 F.3d 1290, 1296 (11th Cir. 2018) (quotation omitted). Plaintiff's allegations readily surpass this threshold.

## ARGUMENT

I.  **Plaintiff's Complaint Is Not A Shotgun Pleading**

   A.  **The Purported Pleading Defects Do Not Make It Virtually Impossible To Understand Which Allegations Of Fact Support Which Claims For Relief**

First, Defendants move to dismiss Plaintiff's Complaint by mischaracterizing it as a "shotgun" pleading. ECF No. 30 at 1-2, 4-5. The Eleventh Circuit has identified four "rough" types of pleadings that can be characterized as "shotgun" pleadings. *Weiland v. Palm Beach Cnty.*

6

*Sheriff's Office*, 792 F.3d 1313, 1321-23 (11th Cir. 2015). Defendants complain of two purported violations here, arguing that Plaintiff has "incorporat[ed] all preceding counts into every subsequent count" and has "impermissibly alleg[ed] all counts against all defendants generally." ECF No. 30 at 1-2, 4-5 (citing *Weiland*, 792 F.3d at 1321-23).

To be clear, dismissal under Rules 8(a)(2) and 10(b) is appropriate only "where it is *virtually impossible* to know which allegations of fact are intended to support which claim(s) for relief." *Weiland*, 792 F.3d at 1325 (cleaned up); *see also id*. at 1323 ("The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another … to give the defendants adequate notice against them and the grounds upon which each claim rests."). Here, notwithstanding those purported deficiencies, Plaintiff's Complaint asserts factual allegations which adequately notify Defendants of the misconduct and the specific legal claims against them, so dismissal is improper.

As to Defendants' argument that because Plaintiff incorporated each paragraph of his Complaint at the beginning of each legal count, dismissal of the entire Complaint is warranted, Defendants are mistaken. ECF No. 30 at 4. While Plaintiff does refer to and incorporate each paragraph of his Complaint at the beginning of each legal count, that would matter only if Plaintiff's "failure to more precisely parcel out and identify the facts relevant to each claim materially increased the burden of understanding the factual allegations underlying each count." *Weiland*, 792 F.3d at 1324. Defendants have made no attempt to show that this is such a situation.

Nor could they. The task of figuring out which of the paragraphs that are incorporated into each count are relevant to the claims therein is "hardly a task at all," given that the Complaint contains subheadings to guide Defendants. *Weiland*, 792 F.3d at 1324-25 ("The task of figuring out which … paragraphs … are relevant … is greatly simplified by the organization of the … factual allegations into subsections."). For example, before paragraph 30, there is a heading that

reads "Unduly Suggestive Identification Procedures." ECF No. 1 at 5. Clearly, the following paragraphs relate to the Officer Defendants' use of (or sanctioning of the use of) unduly suggestive identification procedures to frame Plaintiff, including his due process, § 1983 and state-law conspiracy, and intentional infliction of emotional distress claims. And before paragraph 47, there is a heading that reads "Valle-Ramos' Wrongful Arrest, Conviction, and Imprisonment." ECF No. 1 at 7. The paragraphs following that heading, then, obviously relate to the Officer Defendants' decision to proceed with arresting and causing Plaintiff's wrongful conviction notwithstanding the fact that they knew he no longer wore an afro and that there was no probable cause to suspect him of the crimes, including his § 1983 and state-law malicious prosecution claims. The Complaint further shows how the Defendant Officers were empowered to commit this misconduct due to Defendant City's inadequate or nonexistent policies and practices. *See infra* Section III. As such, it is disingenuous for Defendants to say, as they do, that it is *virtually impossible* for them to determine which facts apply to which claims.

As for Defendants' argument that Plaintiff's Complaint must be dismissed because he asserted Counts I-VII against all Defendants, they are once again mistaken about the standard for dismissal. ECF No. 30 at 4. While Plaintiff does refer generally to all the named Defendants in Counts I-VII, it is not improper to refer to defendants collectively where all those defendants engaged in the same conduct. *Kyle K. v. Chapman,* 208 F.3d 940, 944 (11th Cir. 2000) (collective allegations do "not render the complaint deficient" when "all defendants are responsible for the alleged conduct"); *S.Y. v. Holiday Hospitality*, 2021 WL 1751363, at *2 (M.D. Fla. May 4, 2021) ("A fair reading of the Complaint is that each of these defendants was involved in the identified conduct attributed to the 'Staybridge Suites Defendants.' … The group allegations do not fail to state a claim, and the Complaint does not constitute a shotgun pleading.") (internal citation

8

omitted). Moreover, each Defendant will separately respond, and each is free to admit or deny as that Defendant sees fit.

In short, Plaintiff's complaint is *not* a shotgun pleading because he has provided the Defendants with "adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland*, 792 F.3d at 1323; *see also* ECF No. 1 at ¶¶ 17-61. This Court should not dismiss Plaintiff's Complaint on that ground.

> **B.     This Court Should Reject Defendants' Challenge To Plaintiff's Failure To Intervene (Count III) And Conspiracy (Counts IV & VII) Claims**

Defendants advance one additional argument regarding Plaintiff's supposed pleading violations. They say that, by alleging the failure to intervene and conspiracy counts against all Defendants, "it is unclear what [Defendant] Stanley is defending against." ECF No. 30 at 5. Defendants are wrong.

As for the failure-to-intervene claim, Defendants say that it is unclear "what constitutional tort committed by someone else must be analyzed." ECF No. 30 at 5. This objection is difficult to understand, as Plaintiff's pleading hardly hides the ball.

Indeed, it is well-established that if a police officer "fails or refuses to intervene when a constitutional violation … takes place in his presence, the officer is directly liable under Section 1983." *Ensley v. Soper*, 142 F.3d 1402, 1407 (11th Cir. 1998) (quoting *Byrd v. Clark*, 783 F.2d 1002, 1007 (11th Cir. 1986)). Here, Plaintiff alleges that Defendants Stanley and another OPD Officer worked on the investigation, *see infra* Section II, and each stood by while the other acted to frame Plaintiff for those crimes, thereby violating his constitutional rights. ECF No. 1 ¶¶ 32-43, 48-50. For example, both of those Defendants were present and could have intervened during the interrogation of Plaintiff given that he obviously did not have an afro as depicted in his 2011 driver's license photo, and so he did not match the descriptions of the perpetrator given by the witnesses. *Id.* ¶¶ 48-49. Similarly, each of the Defendants could have intervened in the use of the

9

unduly suggestive photo array that was designed for the sole purpose of framing Plaintiff. *Id*. ¶¶ 32-43. These allegations are plainly sufficient to put the Defendants on notice, particularly given Plaintiff is not required to plead the theories underlying his claims, but only to provide a short and plain statement of those claims that is plausible on its face. Fed. R. Civ. P. 8(a)(2); *Twombly*, 550 U.S. at 570.

Regarding the conspiracy counts, Defendants claim it is unclear what "agreement" Stanley will be required to disprove "for the purposes of summary judgment." *Id*. Defendants' argument fails to appreciate that the case is just at the pleading stage, and that discovery will precede summary judgment. But regardless, Plaintiff's pleadings suffice. Owing both to the fact that conspirators rarely admit their misconduct, and that evidence of conspiracy requires questions of intent, the existence of an unlawful conspiracy is generally a factual issue that should be resolved by a jury, "so long as there is a possibility that the jury can infer from the circumstances (that the alleged conspirators) had a 'meeting of the minds' and thus reached an understanding to achieve the conspiracy's objectives." *Maddox v. Georgia Dep't of Hum. Servs., Div. of Fam. & Child. Servs.*, 2012 WL 12893269, at *30 (N.D. Ga. Sept. 28, 2012) (cleaned up).

In his Complaint, Plaintiff details how the Defendant Officers—including Stanley and the other OPD Officer who arrested and interrogated him—had reason to believe Plaintiff did not match the description of the perpetrator given by the witnesses. ECF No. 1 ¶¶ 48-50. He further alleges that, despite this knowledge, Defendants persisted in framing him as the perpetrator of the Gonzalez burglary. *Id*. One step in accomplishing their goal to frame Plaintiff was to obtain manipulated identifications from two witnesses. *Id*. ¶¶ 32-43. Once Defendant Stanley procured the first manipulated eyewitness identification, he and the unidentified OPD Officer arrested and interrogated Plaintiff. *Id*. ¶ 48. It was obvious to those Officers that Plaintiff's hair, just one week after the crimes, in no way resembled the "poofy" afro described by the witnesses. *Id*. ¶¶ 48-49.

Yet the Defendant Officers persisted in framing him, causing him injury. *Id*. ¶¶ 48-49, 71-77. A reasonable inference is that, after that interrogation, Defendant Stanley and the other OPD Officer agreed to carry on in their plot to convict Plaintiff for crimes he did not commit, and thereafter suppress and destroy any evidence of wrongdoing. Those allegations of "[s]uch a 'knowing conspiracy' among … Defendants" are sufficient to state a claim for conspiracy. *Youngblood v. Fla.*, 2005 WL 8159645, at *7 (M.D. Fla. Mar. 17, 2005).

II. **Plaintiff Provided Sufficient Identifying Information For Two "Unknown Officer" Defendants To Survive Dismissal**

Defendants next argue that the "Unknown Officers" should be dismissed from the Complaint. ECF No. 30 at 3, 5-6. Defendants are correct that, "[a]s a general matter, fictitious-party pleading is not permitted in federal court." *Id*. at 5 (quoting *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010)). There is an exception to that rule, however, when the plaintiff provides a description of the defendant that is "sufficiently clear to allow service of process." *Vielma v. Gruler*, 808 F. App'x 872, 880 (11th Cir. 2020) (quoting *Dean v. Barber*, 951 F.2d 1210, 1215-16 & n.6 (11th Cir. 1992)). Plaintiffs have also been "allowed to use fictitious names to indicate real defendants where it appeared that discovery would likely uncover the defendants actual names." *Doss v. Holder*, 2023 WL 6313935, at *7 (M.D. Fla. Sept. 28, 2023) (cleaned up). Here, Plaintiff has provided additional, specific descriptions, for two "Unknown Officers," whose actual identities will likely be uncovered in discovery.

For one, Plaintiff has described an interrogation conducted by Defendant Stanley and one other OPD Officer. ECF No. 1 ¶ 48. He alleges that, during that interrogation, "it was obvious that his hair, pulled back in a ponytail" did not resemble an afro that the witnesses had described, yet Defendants persisted nonetheless in targeting him. *Id*. ¶¶ 48-49. And because Plaintiff alleges that just two OPD Officers interrogated him, and the identity of one of those Officers—Defendant Stanley—is known, the actual name of the other OPD Officer will be easily obtained through early

discovery of Defendants' investigative file. *Doss*, 2023 WL 6313935, at *7. The same is true for the second unknown OPD Officer detailed by Plaintiff's Complaint. That Unknown Officer, as Plaintiff alleged, was acting as a supervisor for Defendant Stanley during the investigation and signed off on Defendant Stanley's investigative cost expense report. *Id*. ¶ 60. Once again, because there is only one OPD Officer who signed off on Defendant Stanley's report, Defendants' investigative file should reveal the supervising Officer's identity as well. Because Plaintiff has provided enough information to show that early discovery will "likely uncover the defendants actual names," the "Unknown Officers" should not be dropped from the Complaint. *Doss*, 2023 WL 6313935, at *7.

Moreover, Defendants' attempt to analogize this case to *Richardson v. Johnson*, 598 F. 734 (11th Cir. 2010), is unpersuasive. ECF No. 30 at 5. There, the district court found that a prisoner-plaintiff's complaint against a "John Doe" prison guard was insufficient because there was no way "to identify the defendant among the many guards employed at [the prison]." *Richardson*. 598 F.3d at 738. Accordingly, the district court dismissed the "John Doe" guard, and the Eleventh Circuit affirmed. *Id*. But the pleadings in this case are distinguishable: As was just explained, Plaintiff has provided sufficient information to show that the two specific Unknown Officers can and will be identified amongst the many officers employed by the Orlando Police Department as soon as discovery commences. *See Doss*, 2023 WL 6313935, at *7.

**III.  Plaintiff's *Monell* Allegations Are Not Conclusory**

To succeed on a claim under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), Plaintiff must "prove that the City had a policy, custom or practice that caused the deprivation" of his constitutional rights. *Hoefling v. City of Miami*, 811 F.3d 1271, 1279 (11th Cir. 2016). According to the City, Plaintiff has not marshalled sufficient evidence to prove that the City had any policies or practices that caused Plaintiff's constitutional injuries. ECF No. 30 at 6-11. They

12

also seem to argue that Plaintiff needed to have identified a policymaking individual to successfully plead liability under *Monell*. *Id*. But the standard at the pleading stage is lenient—and for good reason: No written or oral discovery has commenced, so Plaintiff has not yet had the opportunity to develop the facts the City claims he should already have. Because the City has put the proverbial cart before the horse, its arguments fail.

To start, Plaintiff has alleged practices of the City sufficient to satisfy *Monell* at the pleading stage. He has described practices and customs of "officers and agents" of the Orlando Police Department. And, as the Supreme Court has explained, "[m]unicipalities . . . conduct much of the business of governing through human agents." *City of St. Louis v. Praprotnick*, 485 U.S. 112, 138 (1988) (Brennan, J., concurring). "Where those agents act . . . pursuant to informal practices 'so permanent and well settled as to constitute a "custom or usage" with the force of law' we naturally ascribe their acts to the municipalities themselves and hold the latter responsible for any constitutional deprivations." *Id*. (quoting *Adickes v. S.H. Kress & Co*, 389 U.S. 144, 167-68 (1970)); *Fundiller v. City of Cooper City*, 777 F.2d 1436, 1443 (11th Cir. 1985) (approving complaint alleging "custom of allowing excessive force" because "persistent failure to take disciplinary action against officers can give rise to the inference that a municipality has ratified conduct, thereby establishing a 'custom'"); *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1308 (11th Cir. 2001) (city's "failure to correct the constitutionally offensive actions of its employees can rise to the level of a custom or policy"). As such, the practices of officers of the Orlando Police Department are the practices of the City itself. In particular, Plaintiff's Complaint identified a number of practices and customs, including that Orlando Police Officers: "fabricated evidence," "manipulat[ed] false eyewitness identifications," "destroyed … evidence," and "withheld material exculpatory evidence." *Id*. ¶¶ 1, 82-83, 98. For that reason, Defendants' argument fails.

To the extent the City argues that Plaintiff's *Monell* claim should be dismissed because

Plaintiff failed to identify the City's policymaker, that argument also falls flat. As the Eleventh Circuit has held, "identifying and proving that a final policymaker acted on behalf of a municipality is 'an evidentiary standard and not a pleading requirement.'" *Hoefling*, 811 F.3d at 1280 (quoting *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 510 (2002)). "Although [Plaintiff] may ultimately have to identify (and provide proof concerning) a single final policymaker in order to survive summary judgment or prevail at trial we do not think that he had to name that person in his complaint in order to survive a Rule 12(b)(6) motion." *Id*. (internal citation omitted).

## IV. The City Is Not Entitled To Sovereign Immunity On Plaintiff's State-Law Conspiracy Claim

Defendants also argue that the City cannot be liable for any of the state-law torts alleged by Plaintiff because it is entitled to sovereign immunity. ECF No. 30 at 11-12. Under Florida law, a City can be liable for intentional torts so long as the employee was acting within the course and scope of his employment and not with "bad faith, malicious purpose, or wanton and willful disregard" of Plaintiff's rights. *N.R. by Ragan v. Sch. Bd. of Okaloosa Cnty., Fla.*, 418 F. Supp. 3d 957, 997-98 (N.D. Fla. 2019) (quoting Fla. Stat. § 768.28(9)(a)). "If the facts alleged can occur only from bad faith or malicious or wanton and willful conduct, then the claim against the government entity fails on sovereign immunity grounds." *Id*. (cleaned up).

Plaintiff agrees that his state-law malicious prosecution (Count V) and intentional infliction of emotional distress[1] (Count VI) claims cannot proceed against the City because the City is protected by sovereign immunity on those claims. *See* ECF No. 30 at 11-12. The civil conspiracy claim (Count VII), however, constitutes an "intentional tort that do[es] not inherently or necessarily involve [the] elements which would activate [sovereign] immunity." *Darnell v. Rivera*,

---

[1] Defendants concede that the question whether Plaintiff has stated a claim for intentional infliction of emotional distress against the individual Defendants is a question "better reserved for summary judgment," so Plaintiff does not address that claim. ECF No. 30 at 2.

2016 WL 309050, at *3 (M.D. Fla. Jan. 26, 2016) (cleaned up). Accordingly, dismissal of that claim against the City on the basis of sovereign immunity is not warranted.

Because dismissal is not warranted on, at the very least, Plaintiff's civil conspiracy claim against the City, Defendants' argument regarding Plaintiff's *respondeat superior* claim (Count VIII) fails as well. ECF No. 30 at 12. Defendants argue that, because the City is entitled to sovereign immunity regarding the state-law torts alleged by Plaintiff, the *respondeat superior* theory of liability fails by default. As was just explained, however, the law is clear that the City is not entitled to sovereign immunity on the civil conspiracy claim, nor those on which it did not move. Since at least some state-law tort claims remain, so too does the *respondeat superior* claim.

Even if this Court is inclined to dismiss the *respondeat superior* claim because Florida courts recognize *respondeat superior* as a legal theory rather than an independent cause of action, dismissals on this basis are "purely technical." *McKenzie v. United States Tennis Ass'n Inc.*, 2023 WL 3058036, at *8 n.20 (M.D. Fla. Apr. 24, 2023). That is, even when courts dismiss *respondeat superior* claims on this basis, parties are not precluded from arguing that the theory applies to the case and courts are not precluded from determining that the theory has been plausibly pled. *Id.*; *see also Chunhong Jia v. Boardwalk Fresh Burgers & Fries, Inc.*, 2020 WL 5628734, at *2-3 (M.D. Fla. Sept. 21, 2020). In that sense, *respondeat superior*, when pled as its own count, works to put a party on notice of the applicability of this doctrine to any applicable claims. *Id.* [2]

## V. Plaintiff's Due Process (Count I) And Malicious Prosecution (Counts II & V) Claims Against Defendant Stanley Do Not Need To Be "Cleaned Up"

Without any analysis, Defendants argue that it might be possible for Plaintiff to state plausible § 1983 claims against Defendant Stanley for due process violations and malicious

---

[2] Plaintiff agrees to voluntarily dismiss his Indemnification claim (Count IX) against the City at this stage, without prejudice to renewing it should Plaintiff be fortunate enough to secure a verdict that needs to be indemnified.

15

prosecution "if the complaint were appropriately 'cleaned up.'" ECF No. 1 at 2. By failing to support that argument with any analysis or legal authority, Defendants have waived it. *In re Egidi*, 571 F.3d 1156, 1163 (11th Cir. 2009). To the extent this Court is inclined to consider the sufficiency of the allegations underlying those claims anyway, it should conclude that Plaintiff has easily satisfied his burden at this stage.

Start with the due process claim against Defendant Stanley (Count I). A law enforcement officer can be liable under § 1983 for a due process violation if he manipulates an unnecessarily suggestive photo lineup and creates a substantial risk of misidentification. *Johnson v. Dugger*, 817 F.2d 726, 729 (11th Cir. 1987); *see also Gore v. Hardy*, 2011 WL 13295388, *12 (M.D. Fla. May 23, 2011). Here, Plaintiff alleges that Defendant Stanley prepared a deliberately suggestive six-person photo array including a photo of Valle-Ramos with an afro amongst five other filler photographs without afros. ECF No. 1 ¶¶ 32-34. He then used that unduly suggestive photo array to coerce two false eyewitness identifications, correctly believing that the witnesses could be manipulated into selecting Valle-Ramos because he stood out amongst the other photographs. *Id*. ¶¶ 35-42. When one of the witnesses became doubtful after her identification, Stanley smiled and informed her that she had selected the perpetrator and told her that the victim had identified the same photograph. *Id*. ¶ 42. That confirmation was unduly suggestive. *Id*. Defendant Stanley then participated in causing those manipulated eyewitness identifications to be used at Plaintiff's trial, directly resulting in Plaintiff's unjust and wrongful criminal prosecution, conviction, and the deprivation of his liberty. *Id*. ¶¶ 49-59. That is sufficient to state a due process violation against Defendant Stanley, particularly given Plaintiff was required only to provide a short and plain statement of a due process claim that is plausible on its face. Fed. R. Civ. P. 8(a)(2); *Twombly*, 550 U.S. at 570.

As for the § 1983 and state-law malicious prosecution claims against Defendant Stanley, they also survive. "To establish a federal claim for malicious prosecution under § 1983, a plaintiff must prove (1) the elements of the common-law tort of malicious prosecution and (2) a violation of his Fourth Amendment right to be free from unreasonable seizures." *Blue v. Lopez*, 901 F.3d 1352, 1357 (11th Cir. 2018). Because Plaintiff's allegations state a claim for malicious prosecution under § 1983, he has stated a claim for malicious prosecution under state-law as well.

As to the second prong, "it is well established that an arrest without probable cause is an unreasonable seizure that violates the Fourth Amendment." *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1256 (11th Cir. 2010). Construed in Plaintiff's favor, the Complaint alleges that there was no probable cause to arrest him for the Gonzalez burglary: No physical evidence connected him to the crime scene and Plaintiff's hair, just one week after the crime, in no way resembled the "poofy" afro described by the witnesses. ECF No. 1 ¶ 49. Indeed, the only evidence tying Plaintiff to the crime at the time of his arrest—Gonzalez's supposed identification—was procured through Defendants' manipulation and an unduly suggestive identification procedure. *Id*.

As to the first prong, the elements of the common-law tort of malicious prosecution in Florida are: "(1) [A]n original judicial proceeding against the present plaintiff was commenced or continued; (2) the present defendant was the legal cause of the original proceeding; (3) the termination of the original proceeding constituted a bona fide termination of that proceeding in favor of the present plaintiff; (4) there was an absence of probable cause for the original proceeding; (5) there was malice on the part of the present defendant; and (6) the plaintiff suffered damages as a result of the original proceeding." *Melford v. Kahane & Assocs.*, 371 F. Supp. 3d 1116, 1123-24 (S.D. Fla. 2019). The criminal action commenced against Plaintiff satisfies the first element. ECF No. 1 ¶ 50. The only evidence tying Plaintiff to the crime—Gonzalez's supposed identification—was procured by Defendant Officers' (including Defendant Stanley's)

17

manipulation and an unduly suggestive identification procedure, satisfying element two. *Id*. ¶¶ 32-43, 51. That the court vacated Plaintiff's conviction and the State entered a motion of *nolle prosequi* and dismissed all charges against him satisfies element three. *Id*. ¶ 70; *see also Trump v. Clinton*, 626 F. Supp. 3d 1264, 1312 (S.D. Fla. 2022). Malice, for the purposes of a malicious prosecution claim, can be inferred from a lack of probable cause. *Melford*, 371 F. Supp. 3d at 1126. As was already explained, Plaintiff's pleadings support a reasonable inference that Defendants had no probable cause to suspect Plaintiff of the burglary and grand theft, so elements four and five are met. *See* ECF No. 1 ¶ 49. And Plaintiff's Complaint satisfies element six by detailing the injuries—physical, mental, and emotional—he suffered as a result of being arrested, tried, and convicted for crimes he did not commit. ECF No. 1 ¶¶ 71-77.

In sum, Plaintiff's well-pleaded allegations, construed in his favor, easily establish the elements required to state due process and malicious prosecution violations. Accordingly, there is no reason he should be required to "clean[] up" those claims, whatever that means.

## CONCLUSION

For all of the reasons stated above, Defendants' motion should be denied.

Respectfully submitted this **27th** day of September, 2024,

**JORGE VALLE-RAMOS**

By: /s/ Rosalind Dillon
*One of Plaintiff's Attorneys*

Jon Loevy
Rosalind Dillon
LOEVY & LOEVY
311 N. Aberdeen St.
Chicago, IL 60607
(312) 243-5900

18