**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

|  |  |  |
|---|---|---|
| JORGE VALLE-RAMOS, | ) | |
| | ) | Case No. 6:24-CV-1276 |
| *Plaintiff*, | ) | |
| | ) | |
| *v.* | ) | |
| | ) | |
| CITY OF ORLANDO, MICHAEL | ) | |
| STANLEY, and UNKNOWN OFFICERS. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| *Defendants*. | ) | |
| | ) | |
| | ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO CITY OF ORLANDO'S
MOTION TO DISMISS AMENDED COMPLAINT**

*Counsel for Plaintiff*
Jon Loevy
Rosalind Dillon
Loevy and Loevy
311 N. Aberdeen St.
Chicago, IL 60607
jon@loevy.com
dillon@loevy.com

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................ii

INTRODUCTION ............................................................................................................... 1

LEGAL STANDARD.......................................................................................................... 2

ARGUMENT...................................................................................................................... 3

I.     Plaintiff's *Monell* Count is Sufficiently and Plausibly Pleaded.......................................... 3

       A.     Legal Standard for Local Governing Body Liability............................................. 3

       B.     The City Misapprehends The Relevant Inquiry At This Stage............................. 4

       C.     Plaintiff Sufficiently Pleaded A *Monell* Claim Against The City ......................... 5

       D.     The City's Remaining Arguments Fail .................................................................. 11

CONCLUSION.................................................................................................................. 14

## TABLE OF AUTHORITIES

**Cases**                                                                                                                          **Page(s)**

*Aatrix Software, Inc. v. Green Shades Software, Inc.,* 882 F.3d 1121 (Fed. Cir. 2018).............. 13

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................... 2, 3, 6

*BBL, Inc. v. City of Angola*, 809 F.3d 317 (7th Cir. 2015) ............................................ 5

*Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397 (1997) ................................................... 4

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)..................................................... 2, 6

*Brown v. Cty. of Fort Lauderdale,* 923 F.2d 1474 (11th Cir. 1991)........................... 4, 5, 6, 8, 14

*Buckler v. Israel*, No. 16-11115, 2017 WL 710431 (11th Cir. Feb. 23, 2017)............................. 3

*Campbell v. Cnty. of Volusia*, No. 6:16-CV-1891-ORL-28TBS, 2017 WL 2304453
  (M.D. Fla. May 25, 2017) ................................................................... 4, 6, 9, 10, 14

*Connick v. Thompson*, 563 U.S. 51, 61 (2011) ....................................................... 3, 4, 6

*DeGraw v. Gualtieri*, No. 8:18-CV-02116-T-02SPF, 2019 WL 250757
  (M.D. Fla. Jan. 17, 2019) ......................................................................... 10

*Dunsmore v. Wells*, No. 8:23-CV-1456-CEH-CPT, 2024 WL 3205164
  (M.D. Fla. June 27, 2024) ......................................................................... 10

*Evans v. McClain of Georgia, Inc.*, 131 F.3d 957 (11th Cir. 1997) ............................... 5

*Fountain v. Cty. of Lakeland*, No. 8:11-CV-52-T-17TBM, 2011 WL 3703454
  (M.D. Fla. Aug. 23, 2011) ..................................................................... 4, 6, 11

*Gates v. Khokai*, 884 F.3d 1290 (11th Cir. 2018)....................................................... 3

*Gibson v. Cnty. of Washoe*, 290 F.3d 1175 (9th Cir. 2002)........................................... 9

*Gore v. Hardy*, No. 3:10-CV-343-J-34TEM, 2011 WL 13295388 (M.D. Fla. May 23, 2011).... 13

*Griffin v. Cty. of Opa-Locka*, 261 F.3d 1295 (11th Cir. 2001) ..................................... 10

*Griffin v. Internal Revenue Serv.*, No. 22-24023-CIV-SCOLA, 2024 WL 2866657
  (S.D. Fla. May 30, 2024) ......................................................................... 5

*Hoefling v. Cty. of Miami*, 811 F.3d 1271 (11th Cir. 2016)....................................... 2. 3, 6, 10, 11

*Homonai v. Cty. of Fruitland Park*, No. 5:16-CV-610-OC-30PRL, 2017 WL 1495806
  (M.D. Fla. Apr. 26, 2017) ..................................................................... 10, 12, 14

*Hunt v. Gualtieri*, 8:16-CV-509-T-33AAS, 2016 WL 7034412 (M.D. Fla. Dec. 2, 2016).......... 13

*Ireland v. Prummell*, No. 2:17-CV-468-FTM-38MRM, 2018 WL 3956
  (M.D. Fla. Aug. 17, 2018) ......................................................................... 10

*J.K.J. v. Polk Cty.*, 960 F.3d 367 (7th Cir. 2020)......................................................... 8

*Johnson v. Cty. of Shelby*, 574 U.S. 10 (2014) ....................................................... 5, 6

*Johnson v. Nocco*, No. 8:20-CV-1370, 2020 WL 6701606 (M.D. Fla. Nov. 13, 2020).......... 9, 14

ii

*Lane v. Phillips*, 835 F.3d 1302 (11th Cir. 2006) ........................................................... 2

*Leatherman v. Tarrant Cnty. Narcotics Intelligence and Coordination Unit*,
    507 U.S. 163 (1993)................................................................................................ ..6

*Lee v. Cty. of Los Angeles*, 250 F.3d 668 (9th Cir. 2001)............................................... 11

*Long v. Cty. of Los Angeles*, 442 F.3d 1178 (9th Cir. 2006) ........................................... 3

*Matthews v. Columbia Cnty.*, 294 F.3d 1294 (11th Cir. 2002)................................ 4, 6, 8

*Menotti v. Seattle*, 409 F.3d 1113 (9th Cir. 2005) ........................................................ 10

*Monell v. Department of Social Services*, 436 U.S. 658 (1978) ...................................... 3

*Owens v. Baltimore Cty. State's Attorneys Off.*, 767 F.3d 379 (4th Cir. 2014)........................ 2, 3

*Pembaur v. Cty. of Cincinnati*, 475 U.S. 469 (1986)...................................................... 4

*Pettway v. Pettway*, 1:22-00371-KD-N, 2023 WL 2922840 (S.D. Ala. Mar. 20, 2023)........ 13, 14

*Polk Cty., Wisconsin v. J.K. J.,* 141 S. Ct. 1125 (2021)................................................. 8

*Ramos v. Miami-Dade Cnty. Bd. of Cnty. Comm'rs*, No. 08-20065-CIV-ALTONAGA,
    2008 WL 11410102 (S.D. Fla. July 10, 2008).................................................... 12

*Rocker v. City of Ocala*, 355 F. App'x 312 (11th Cir. 2009)......................................... 13

*S.D. v. Cty. of Cape Coral*, No. 2:17-CV-111-FTM-99MRM, 2017 WL 4342363
    (M.D. Fla. Sept. 29, 2017) .................................................................................. 4

*Soucre v. City of Tampa*, No. 8:14-CV-2815-T-20TBM, 2015 WL 144275
    (M.D. Fla. Jan. 12, 2015) ............................................................................ 10, 11

*Swierkiewicz v. Sorema*, N.A., 534 U.S. 506 (2002) ..................................................... 12

*Tompkins-Holmes v. Gualtieri*, No. 8:17-CV-52-T-33AEP, 2017 WL 519307

    (M.D. Fla. Feb. 8, 2017) .............................................................................. 12, 14

*Williams v. Fulton County Sch. Dist.*, 181 F. Supp. 3d 1089 (N.D. Ga. 2016) ............................ 13

*Winemiller v. Judd,* No. 8:13-CV-2995-T-17EAJ, 2014 WL 3900231
    (M.D. Fla. Aug. 8, 2014) .................................................................................. 11

*Winstead v. Lafayette Cnty. Bd. of Cnty. Comm'rs*, 197 F. Supp. 3d 1334 (N.D. Fla. 2016) ........ 5

*Young v. Cty. of Augusta*, 59 F.3d 1160 (11th Cir. 1995)............................................... 4

**Rules**

Fed. R. Civ. P. 8................................................................................................... 2, 10

Rule 12(b)(6).................................................................................................. 5, 12, 13

## INTRODUCTION

Plaintiff Jorge Valle-Ramos was wrongfully convicted of a burglary and grand theft. Arrested at only 19 years old, Plaintiff spent the next three years in prison, spent five years on supervised release, and had to pay restitution for crimes he did not commit. His conviction rested on the false and manipulated identifications and testimony of two witnesses. Plaintiff had nothing to do with the crimes, and no reliable evidence ever connected him to them. He was exonerated when, after nearly a decade, an eyewitness who was manipulated into identifying him came forward to confirm what she had feared all along: Plaintiff was not the person she had seen fleeing from the scene of the crimes. Plaintiff moved for a new trial based on that eyewitness coming forward and, after a hearing, the court vacated Plaintiff's conviction in March 2024. A week later, the State entered a motion of *nolle prosequi* and dismissed all charges.

The story of how Plaintiff came to be prosecuted and convicted starts and stops with Defendants. In particular, Orlando Police Officers, in conspiracy with one another, manufactured a photo-array lineup designed to implicate Plaintiff and withheld the manner in which that fabrication was concocted to coverup their wrongdoing. The Orlando Police Officers then coerced and manipulated eyewitness identifications using the photo-array to implicate their chosen suspect, even though they knew there was no reason to believe that Plaintiff committed the crimes.

How did police officers, employed by the City of Orlando ("the City"), come to commit such misconduct? The operative complaint has an answer: The misconduct was committed pursuant to the policies and practices of the City. In fact, over more than 20 pages and nearly 150 paragraphs, the First Amended Complaint ("FAC") sets out Defendants' acts of misconduct, the ways in which they violated Plaintiff's rights, and the role the City played in causing Plaintiff's

1

wrongful arrest, prosecution, conviction, and imprisonment. *See* ECF No. 41, FAC (specific allegations are discussed, as necessary, below).

Yet the City urges this Court to dismiss Plaintiff's *Monell* claim against it, seeking to heighten the operative pleading standard and asking this Court to ignore relevant law and well-pleaded facts in the process. ECF No. 44, Orlando's Mot. to Dismiss. Because Plaintiff's *Monell* claim against the City is beyond sufficiently pleaded, the motion should be denied.

## LEGAL STANDARD

Federal Rule of Civil Procedure 8 requires only "a short and plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a). At this stage of the case, courts evaluate the sufficiency of the pleading based on a liberal "notice pleading" standard where the pleading need only give defendants fair notice of the claims, not "detailed factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). Indeed, at the motion to dismiss stage, all that is required is that the plaintiff "set out facts sufficient to 'raise a right to relief above the speculative level.'" *Lane v. Phillips*, 835 F.3d 1302, 1305 (11th Cir. 2006) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Moreover, although the plaintiff's allegations "must be plausible . . . plausibility is not probability." *Id.*; *see also Owens v. Baltimore Cty. State's Attorneys Off.*, 767 F.3d 379, 403 (4th Cir. 2014) ("The recitation of facts need not be particularly detailed, and the chance of success need not be particularly high."). That is no less true for a claim against a municipality under *Monell v. Department of Social Services*, 436 U.S. 658 (1978): "Although prevailing on the merits of a *Monell* claim is difficult, simply alleging such a claim is, by definition, easier." *Owens*, 767 F.3d at 403; *see also Hoefling v. Cty. of Miami*, 811 F.3d 1271, 1275-76 (11th Cir. 2016). "A plaintiff fails to state a claim only when he

2

offers 'labels and conclusions' or formulaically recites the elements of his § 1983 cause of action." *Owens*, 767 F.3d at 403 (quoting *Iqbal*, 556 U.S. at 678).

On a motion to dismiss, this Court "accept[s] the facts alleged in the complaint as true, drawing all reasonable inferences in the plaintiff's favor." *Gates v. Khokai*, 884 F.3d 1290, 1296 (11th Cir. 2018) (cleaned up).  Plaintiff's *Monell* allegations readily surpass the pleading threshold.

**ARGUMENT**

**I.    Plaintiff's *Monell* Count is Sufficiently and Plausibly Pleaded**

The Court should deny the City's motion to dismiss because Plaintiff's allegations more than clear the pleading hurdle to state a cognizable *Monell* claim.

**A.    Legal Standard for Local Governing Body Liability**

Municipal liability, at its core, asks whether, on the particular facts of the case, the deprivation of the plaintiff's constitutional rights can be fairly attributed to the municipality. A plaintiff can plead a claim for local governing body liability in several ways. *See Hoefling*, 811 F.3d at 1279.

A plaintiff may, for instance, allege that a city had a policy, custom, or practice that caused the deprivation of their constitutional rights. *See, e.g.*, *Monell v. Dep't of Soc. Servs*, 436 U.S. 658, 694-95 (1978); *Hoefling*, 811 F.3d at 1280-81. Inaction, as well as action, can form the basis for this sort of municipal liability. *See Buckler v. Israel*, No. 16-11115, 2017 WL 710431, at *3 (11th Cir. Feb. 23, 2017) ("A municipality's 'policy of inaction' in light of actual or constructive notice 'that its program will cause constitutional violations is the functional equivalent of a decision by the [county] itself to violate the Constitution.'") (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)). And "a county's lack of affirmative policies or procedures to guide employees can amount to deliberate indifference." *Long v. Cty. of Los Angeles*, 442 F.3d

3

1178, 1189 (9th Cir. 2006); *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 403-04 (1997) ("*Brown*"); *Fountain v. Cty. of Lakeland*, No. 8:11-CV-52-T-17TBM, 2011 WL 3703454, at *5-6 (M.D. Fla. Aug. 23, 2011).

In addition, municipal liability can arise from a city's failure to adequately train or supervise police officers. *See*, *e.g.*, *Young v. Cty. of Augusta*, 59 F.3d 1160, 1171 (11th Cir. 1995); *S.D. v. Cty. of Cape Coral*, No. 2:17-CV-111-FTM-99MRM, 2017 WL 4342363, at *4 (M.D. Fla. Sept. 29, 2017); *Fountain*, 2011 WL 3703454, at *5-6. This can occur when the municipality has "disregarded the 'known or obvious consequence' that a particular omission in their training program would cause municipal employees to violate citizens' constitutional rights." *Connick*, 563 U.S. at 51 (quoting *Brown*, 520 U.S. at 410); *Campbell v. Cnty. of Volusia*, No. 6:16-CV-1891-ORL-28TBS, 2017 WL 2304453, at *2 (M.D. Fla. May 25, 2017).

And municipal liability can turn on the conduct of officials with final policy-making authority. This can occur when those policymakers ratify the unconstitutional actions of their employees. *See Pembaur v. Cty. of Cincinnati*, 475 U.S. 469, 480, 483-84 (1986); *see also Matthews v. Columbia Cnty.*, 294 F.3d 1294, 1297 (11th Cir. 2002) ("County liability on the basis of ratification exists when a subordinate public official makes an unconstitutional decision and when that decision is then adopted by someone who does have final policymaking authority.").

### B.    The City Misapprehends The Relevant Inquiry At This Stage

The City insists that, in "parsing the allegations," it is evident that the FAC alleges only a failure to train theory of *Monell* liability and that the FAC does not contain sufficient allegations to support that theory of liability. ECF No. 44 at 5-6. As an initial matter, the City's attempt to carve up Plaintiff's *Monell* Count into one individual legal theory misunderstands the motion to dismiss standard. Rule 8 does not require Plaintiff to plead or allege specific legal theories. *See*

4

*Johnson v. Cty. of Shelby*, 574 U.S. 10, 12 (2014) (per curium); *see also Evans v. McClain of Georgia, Inc.*, 131 F.3d 957, 964 n.2 (11th Cir. 1997) ("[C]omplaint need not specify in detail the precise theory giving rise to recovery. All that is required is that defendant be on notice as to claim being asserted against him and grounds on which it rests.").

Accordingly, a "motion to dismiss under Rule 12(b)(6) doesn't permit piecemeal dismissals of *parts* of claims; the question at this stage is simply whether the complaint includes factual allegations that state a plausible claim for relief." *Griffin v. Internal Revenue Serv.*, No. 22-24023-CIV-SCOLA, 2024 WL 2866657, at *1 (S.D. Fla. May 30, 2024) (quoting *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015)); *see also Winstead v. Lafayette Cnty. Bd. of Cnty. Comm'rs*, 197 F. Supp. 3d 1334, 1341 (N.D. Fla. 2016) ("[T]he challenged *theory* can't be dismissed, either, because dismissal of theories (as opposed to claims) is inappropriate at the motion to dismiss stage."). It would be improper, then, to indulge the City and ask whether Plaintiff can proceed on one specific *Monell* theory and, perhaps, not another as Count V states plausible bases for liability—the City's practices and customs caused a violation of Valle-Ramos's rights. *See Brown v. Cty. of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991) ("[I]f plaintiff succeeds in proving a city policy of discrimination based on the actions of a 'final policymaker,' he would have no need to prove in addition a custom or practice of racial discrimination.").

### C.    Plaintiff Sufficiently Pleaded A *Monell* Claim Against The City

Plaintiff's *Monell* claim is more than sufficiently pleaded to survive dismissal. The City contends the FAC contains only "buzzwords" an no facts to show that it promulgated or approved of any policies or practices—or had knowledge of any constitutional violations resulting from any policies, practices, or failures to train—that caused Plaintiff's constitutional injuries.  ECF No. 44 at 2. The City is simply wrong.

5

The FAC  identifies the underlying constitutional violations, ECF No. 41 ¶¶ 84-97, 109; it identifies the deficient or challenged policies and practices and explains how they were deficient, *id*. ¶¶ 110-11, 116; it connects the policies and practices to the alleged harm, *id*. ¶¶ 112-115, 117, 119; and it identifies the municipal policymakers' deliberate indifference, *id*. ¶¶ 112, 117-18. Those allegations constitute a detailed explanation of why Plaintiff's wrongful conviction was the product of municipal action and not just individual misconduct.

The FAC alleges that the City is liable for constitutional violations that occurred as a result of: (1) Orlando's written policies including gaps and deficiencies in those policies, ¶¶ 110, 114; *Hoefling*, 811 F.3d at 1280-81; (2) widespread practices endemic in the Orlando Police Department, ¶¶ 114, 116; *Brown*, 923 F.2d at 1481; *Fountain*, 2011 WL 3703454, at *5-6; (3) a failure to train and supervise officers of the Orlando Police Department, ¶¶ 111; *Connick*, 563 U.S. at 51; *Brown*, 520 U.S. at 409-10; *Campbell*, 2017 WL 2304453, at *2; *Fountain*, 2011 WL 3703454, at *5-6; and the FAC alleges that (4) supervisors ratified the misconduct outlined in the FAC, ¶¶ 117-19, *Matthews*, 294 F.3d at 1297.

Each of these theories states a viable claim for *Monell* liability, as the authorities cited above and in Section I.A. show. And the bar for adequately pleading a *Monell* theory is not high. The Supreme Court has made clear that, even after *Twombly* and *Iqbal*, there is no heightened pleading requirement for *Monell* claims. *Johnson*, 574 U.S. at 11 ("[A] federal court may not apply a standard 'more stringent than the usual pleading requirements of Rule 8(a)' in 'civil rights cases alleging municipal liability[.]'") (quoting *Leatherman v. Tarrant Cnty. Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 164 (1993)). In the same vein, this Court has explained that "broad statements" can suffice to clear *Iqbal*'s low pleading standards on a motion to dismiss, recognizing the difference between the low burden at pleading and the heightened burden at summary judgment. *Fountain*, 2011 WL 3703454, at *5-6. Plaintiff's

6

*Monell* allegations easily clear the hurdle at the pleading stage.

With respect to written policies, the City seems to believe that Plaintiff does not plead such a scenario. ECF No. 44 at 5-6. The City is wrong again. Indeed, the FAC pleads that the City failed to promulgate policies—or promulgated deficient policies—for the Orlando Police Department governing: (1) the conduct of lineups and identification procedures; (2) writing police reports and taking investigative notes, including notes of witness statements; (3) the collection, documentation, preservation, testing, and disclosure of evidence, including physical evidence, material exculpatory evidence, and impeachment evidence; (4) maintaining investigative files and disclosing those files in criminal proceedings; and (5) intervention to prevent and redress misconduct by other officers. ECF No. 41 ¶ 110. The FAC alleges as well that the City's policies did not provide for training or supervision of officers with respect to any one of the identified deficiencies. *Id.* ¶ 111. And the FAC claims that Orlando policymakers knew of and approved of these defects, making the City at fault for these policy defects. *Id.* ¶ 112-13.

The FAC's additional *Monell* allegations provide that established practices and customs of the Orlando Police Department caused the constitutional violations at issue through their lack of sufficient written policies. The FAC alleges that employees of the Orlando Police Department routinely manipulated statements and testimony of witnesses to implicate criminal defendants in criminal conduct, including through suggestive identification techniques. *Id.* ¶ 116. In addition, the FAC alleges that policymakers had notice of practices whereby officers: (1) failed to properly document and disclose their interactions with witnesses; (2) did not record investigative information in police reports, did not maintain proper investigative files, and/or did not disclose investigative materials to criminal defendants; (3) failed to maintain and/or preserve evidence and/or destroyed evidence; and/or (4) pursued and secured wrongful

7

convictions through profoundly flawed investigations. *Id*. Policymakers in supervisory roles, the allegations continue, encouraged these practices by failing to train and supervise officers on these subjects, which caused these practices to become *de facto* policies of the City. *Id*. ¶¶ 117-18.

In fact, these practices were so widespread, and so well understood, that Orlando Police Department supervisors, acting as policymakers for the City, are alleged to have approved their subordinates' acts of misconduct. *Id*. ¶ 117. Specifically, the FAC pleads that Defendant Sergeant Daniel Brady was a supervisor at the Orlando Police Department during the investigation, *id*. ¶ 11, and he is alleged to have approved of his subordinates' acts of misconduct, *id*. at ¶¶ 11, 30-34, 52, which gives rise to municipal liability under a ratification theory. *See Matthews*, 294 F.3d at 1297. On this score, the FAC alleges that Orlando Police Department supervisors, including Brady, approved their colleagues' decisions to coerce eyewitness identifications, falsify evidence implicating Plaintiff, and suppress exculpatory evidence. ECF No. 41 ¶¶ 11, 30-34, 52, 117. Indeed, the FAC alleges they were responsible for overseeing and approving all aspects of the Gonzalez Burglary investigation, in which the alleged misconduct took place. *Id*.

These types of theories—that there were insufficient policies and training in areas that are recurring in criminal investigations—do not form the type of *Monell* theory that require allegations demonstrating, or eventual proof of, widespread misconduct. *See, e.g., J.K.J. v. Polk Cty.*, 960 F.3d 367, 381 (7th Cir. 2020), *cert. denied sub nom. Polk Cty., Wisconsin v. J.K. J.*, 141 S. Ct. 1125 (2021) ("Sometimes the notice will come from a pattern of past similar violations; other times it will come from evidence of a risk so obvious that it compels municipal action."); *Brown*, 520 U.S. at 409-10 (noting that municipal liability attaches in situations where it is obvious "that the situation will recur and . . . that an officer's lacking specific tools to

8

handle that situation will violate citizens' rights"); *Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1195 (9th Cir. 2002) (concluding that a plaintiff may demonstrate a *Monell* claim for an omission in a municipality's policies or procedures where the need to act is obvious, even in the absence of examples of other misconduct); *Campbell*, 2017 WL 2304453, at *2 (finding dismissal of *Monell* claim inappropriate, explaining that "[a]lthough cases in which 'single incident' liability exist are rare," the plaintiff "sufficiently alleged the need to train officers in the proper use of handcuffs is 'so obvious' that the failure to do so could rise to the level of deliberate indifference."); *Johnson v. Nocco*, No. 8:20-CV-1370, 2020 WL 6701606, at *5 (M.D. Fla. Nov. 13, 2020), *rev'd on other grounds*, 83 F.4th 896 (11th Cir. 2023) (allowing *Monell* claim to proceed based on allegations that plaintiff's constitutional rights were violated by "a failure to adequately train and supervise deputies who are arresting people without sufficient probable cause," explaining that "[a]lthough Plaintiff does not allege a pattern of similar constitutional violations by untrained employees, such allegation is not necessarily required to support a § 1983 claim in this case."). In other words, while a pattern is *one* way of proving some *Monell* theories, it is not required.

Plaintiff's *Monell* theories are sufficiently pleaded. The FAC identifies deficiencies in the City's written policies concerning the five areas identified above and/or the five practices of which the City had notice caused the individual Defendants and others to inflict the constitutional harms set out in the FAC. ECF No. 41 ¶¶ 110-11, 116. Specifically, the FAC alleges the lack of adequate policies and/or the embedded practices caused the individual Orlando Defendants *here* to coerce eyewitness identifications through manipulative and unduly suggestive photo arrays to be used against Plaintiff, *id.* ¶¶ 83-95, 124-42; fabricate false police reports, *id.* ¶¶ 143-146; and suppress critical exculpatory evidence, none of which was properly documented or disclosed to state prosecutors, Plaintiff, or his criminal defense attorneys, *id.* ¶¶

9

147-68. In light of these allegations, the City cannot reasonably contend it lacks notice of Plaintiff's *Monell* theories pertaining to written policies or practices and customs.

These allegations also give the City clear notice that its policymakers are accused of being deliberately indifferent in their refusal to implement training and supervision that would have brought the alleged harmful practices to a halt, and their deliberate indifference is specifically alleged. *See S.D.*, 2017 WL 4342363, at *4 (allowing failure to train and supervise theory of *Monell* liability based on single incident); *Campbell*, 2017 WL 2304453, at *2 (same); *Griffin v. Cty. of Opa-Locka*, 261 F.3d 1295, 1308 (11th Cir. 2001) (explaining city's "failure to correct the constitutionally offensive actions of its employees can rise to the level of a custom or policy"); *see also Menotti v. Seattle*, 409 F.3d 1113, 1147-48 (9th Cir. 2005) (denying summary judgment because examples of unconstitutional conduct by defendant officers during a single protest, in the absence of any reprimand, was sufficient to show an unconstitutional practice).

The level of detail in the FAC thus belies the City's repeated accusation that Plaintiff makes only conclusory allegations through a "litany of 'buzzwords'" and "no ultimate facts." *See, e.g.*, ECF No. 44 at 2, 3, 5. Rule 8 requires no more detailed an account than Plaintiff has presented under its "short, plain, statement" standard. Fed. R. Civ. P. 8(a). Viewed together, there can be no reasonable dispute that the FAC's allegations meet or exceed the types of allegations the Eleventh Circuit and this Court have found passed muster in myriad other cases. *See, e.g.*, *Hoefling,* 811 F.3d at 1280-81; *Dunsmore v. Wells*, No. 8:23-CV-1456-CEH-CPT, 2024 WL 3205164, at *7 (M.D. Fla. June 27, 2024); *DeGraw v. Gualtieri*, No. 8:18-CV-02116-T-02SPF, 2019 WL 250757, at *8 (M.D. Fla. Jan. 17, 2019); *Ireland v. Prummell*, No. 2:17-CV-468-FTM-38MRM, 2018 WL 3956204, at *5 (M.D. Fla. Aug. 17, 2018); *Homonai v. Cty. of Fruitland Park*, No. 5:16-CV-610-OC-30PRL, 2017 WL 1495806, at *7 (M.D. Fla. Apr. 26, 2017); *Campbell*, 2017 WL 2304453, at *2; *Soucre v. City of Tampa*, No. 8:14-CV-2815-T-

20TBM, 2015 WL 144275, at *2 (M.D. Fla. Jan. 12, 2015); *Winemiller v. Judd*, No. 8:13-CV-2995-T-17EAJ, 2014 WL 3900231, at *2-3 (M.D. Fla. Aug. 8, 2014); *Fountain*, 2011 WL 3703454, at *5-6.

D.      **The City's Remaining Arguments Fail**

To be clear, the foregoing is sufficient to deny the City's motion. However, for the sake of completeness, it is worth pointing out explicitly, and to the extent not covered above, the way the City's remaining arguments fail.

First, the City contends it would be "preposterous" to hold the City liable for an "*intentional frame job*" of Plaintiff. ECF No. 44 at 2. But a *Monell* theory of liability does not fail as a matter of law simply because the underlying constitutional violation involves intentional misconduct. *See, e.g.*, *Lee v. Cty. of Los Angeles*, 250 F.3d 668, 682 (9th Cir. 2001) (allowing *Monell* claim to proceed where the need for training and procedures was obvious and where the complaint was "replete with allegations that the defendants acted 'deliberately,' 'recklessly,' 'intentionally,' 'maliciously,' or with 'deliberate indifference.'"); *Soucre*, 2015 WL 144275, at *2 (allowing *Monell* claim to proceed under theory that the City had "adopted policies, procedures, practices or customs … that allow for, among other things, the use of false arrests, false imprisonment, [and] battery," where an individual police officer defendant was alleged to have intentionally and without provocation, shoved plaintiff to the ground and thereafter arrested plaintiff when he called for medical help).

Second, to the extent the City believes that Plaintiff's *Monell* claim fails because the FAC does not "identify a potentially culpable policymaker that 'knew' of illegally suggestive police tactics," that argument also falls flat. ECF No. 44 at 7. The Eleventh Circuit holds that "identifying and proving that a final policymaker acted on behalf of a municipality is 'an evidentiary standard and not a pleading requirement.'" *Hoefling*, 811 F.3d at 1280 (quoting

11

*Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 510 (2002)). So, "[a]lthough [Plaintiff] may ultimately have to identify (and provide proof concerning) a single final policymaker in order to survive summary judgment or prevail at trial, we do not think that he had to name that person in his complaint in order to survive a Rule 12(b)(6) motion." *Id.* (internal citation omitted). Regardless, and as was already explained, Plaintiff has identified a potentially culpable policymaker in Supervisor Sergeant Brady. *See supra* Section I.C.

Third and finally, to the extent the City complains that the two prior instances of misconduct alleged in the FAC—a 2010 wrongful conviction based on a mistaken eyewitness identification and a perfunctory investigation and a 2015 incident where two OPD officers tried to cover up wrongdoing through purposeful omissions from reports—are too remote and too dissimilar to move Plaintiff's allegations across the Rule 12(b)(6) threshold, that argument, too, fails. ECF No. 44 at 9-11. Prior instances of misconduct need not be identical at the Rule 12(b)(6) stage to survive dismissal. *See Tompkins-Holmes v. Gualtieri*, No. 8:17-CV-52-T-33AEP, 2017 WL 519307, at *6-7 (M.D. Fla. Feb. 8, 2017) ("While additional evidence and a higher degree of similarity between incidents may be required to ultimately prove a custom or policy, the allegations in the Complaint that Sheriff Gualtieri maintained a policy of employing excessive force, and of avoiding recordings of deputies to facilitate that use of force, go sufficiently beyond legal conclusions."); *Homonai*, 2017 WL 1495806, at *7 (expressing uncertainty as to whether "any of the specific scandals alleged would amount to deliberate indifference for the [Plaintiffs'] supposed violations" and concluding the plaintiffs "should be given the chance to prove the City's deliberate indifference caused their claimed constitutional violations."). Requiring anything more than that "would essentially require [a] Plaintiff[] to undertake full blown discovery before even filing [his] Complaint[], a proposition not possible under the Federal Rules and not required by the notice pleading of Rule 8(a)." *Ramos v. Miami-*

12

*Dade Cnty. Bd. of Cnty. Comm'rs*, No. 08-20065-CIV-ALTONAGA, 2008 WL 11410102, at *4 (S.D. Fla. July 10, 2008); *see also Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1130 (Fed. Cir. 2018) ("Summary judgment, for example, involves different standards than Rule 12(b)(6).")

And so although the City may be correct that those incidents alone might not be sufficient to prove notice or an unconstitutional practice at trial, "in this preliminary phase of the litigation … where the focus is solely on the allegations of the Amended Complaint[], Plaintiff[] ha[s] sufficiently pled facts to state a claim for relief under *Monell* and § 1983." *Ramos*, 2008 WL 11410102, at *4. Indeed, while "[t]here is no bright line identifying when misconduct transforms from a couple of 'isolated instances' into a pattern of abuse . . . on a motion to dismiss allegations of anything more than [one or two incidents of abuse] are generally sufficient." *Williams v. Fulton County Sch. Dist.*, 181 F. Supp. 3d 1089, 1122 (N.D. Ga. 2016).

For that reason, the cases that the City has cited to show Plaintiff must allege a pattern of factually specific examples of unconstitutional behavior are distinguishable because they arose at summary judgment. *See* ECF No. 44 at 9 (citing *Rocker v. City of Ocala*, 355 F. App'x 312 (11th Cir. 2009); *Gore v. Hardy*, No. 3:10-CV-343-J-34TEM, 2011 WL 13295388, *18 (M.D. Fla. May 23, 2011)); *see also Hunt v. Gualtieri*, 8:16-CV-509-T-33AAS, 2016 WL 7034412, at *4 (M.D. Fla. Dec. 2, 2016) ("Case law cited by Sheriff Gualtieri underscores the importance of similar events to establishing a municipal entity's policy or custom … . But the cases cited by Sheriff Gualtieri were decided at the summary judgment stage, after the plaintiffs had the benefit of discovery to establish a pattern of similar incidents."). The only case that the City cites in support of this argument that involves a motion to dismiss is *Pettway v. Pettway*, 1:22-00371-KD-N, 2023 WL 2922840 (S.D. Ala. Mar. 20, 2023). But to the extent *Pettway* can be read to *require* a that a plaintiff plead a pattern of unconstitutional activity to survive dismissal of a

13

*Monell* claim, that is contrary to Supreme Court—and this Court's—precedent. *See*, *e.g.*, *Brown*, 520 U.S. at 409-10; *Campbell*, 2017 WL 2304453, at *2; *Johnson,* 2020 WL 6701606, at *5. Regardless, Plaintiff's allegations stand in stark contrast to those in *Pettway*: Plaintiff has identified two prior instances of unconstitutional conduct and connected those instances to the alleged constitutional violations at issue here. ECF No. 41 ¶¶ 114-15. And even if the City is correct that "additional evidence and a higher degree of similarity between incidents may be required to ultimately prove a custom or policy," as was just explained, that is a battle for summary judgment. *Tompkins-Holmes*, 2017 WL 519307, at *6-7; *see also Homonai*, 2017 WL 1495806, at *7.

## CONCLUSION

For all of the reasons stated above, the Court should deny the City's Motion to Dismiss.[1]

Respectfully submitted this **16th** day of April, 2025,

**JORGE VALLE-RAMOS**

By:   /s/ Rosalind Dillon
      *One of Plaintiff's Attorneys*

Jon Loevy
Rosalind Dillon
LOEVY & LOEVY
311 N. Aberdeen St.
Chicago, IL 60607
(312) 243-5900

---

[1] As the City points out, the FAC inadvertently reasserts Count IX for "indemnification." ECF No. 44 at 2. That was error, as Plaintiff earlier agreed to voluntarily dismiss that claim "without prejudice to renewing it should Plaintiff be fortunate enough to secure a verdict that needs to be indemnified." ECF No. 31 at 15 n.2.